UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Brent A. Stafford, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:13-cv-697 |
| v. | ) |
| | ) |
| City of St. Peters, Missouri, a municipal corporation; and | ) **Jury Trail Demanded** |
| | ) |
| Tim Hickey, in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Brent A. Stafford, for his complaint against Defendants, states as follows:

### INTRODUCTION

1. On March 17, 2012, Plaintiff was arrested while exercising his core First Amendment political speech and associational rights on a public sidewalk.

2. Although ultimately acquitted, Plaintiff was handcuffed, taken into custody, and detained for approximately three hours on the pretext that he had violated a City of St. Peters' ordinance against trespassing.

3. This is an action for money damages brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

4. Plaintiff also asserts state law claims for false arrest and malicious prosecution.

5. Finally, Plaintiff alleges that his constitutional rights were violated as a result of the policies, customs, and practices of the City of St. Peters, including the inadequate hiring, training, and supervision of police officers; and the contracting out of police services to third

1

parties, without adequate oversight and supervision, in a manner that caused the violation of Plaintiff's constitutional rights.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C § 1331 and § 1343 and 42 U.S.C. § 1983 to redress the deprivation under color of law of rights secured by the federal constitution and supplemental jurisdiction for the state law claim.

7. Venue lies in the United States District Court for the Eastern District of Missouri because the relevant events or omissions giving rise to Plaintiff's claims occurred in St. Charles County, Missouri. 28 U.S.C. § 1391(b)(2).

8. Divisional venue is in the Eastern Division because the events leading to the claim for relief arose in the St. Charles County, Missouri. E.D. MO. L.R. 2.07(A)(1), (B)(2).

## PARTIES

9. Plaintiff is a resident of the City of O'Fallon, which is located in St. Charles County, State of Missouri.

10. Defendant City of St. Peters is a duly organized political subdivision of the State of Missouri and is located in St. Charles County. The City of St. Peters was at all times relevant to the incidents described in this Complaint the public employer of Defendant Hickey.

11. Defendant Tim Hickey was at all times relevant to the incidents described in this Complaint a law enforcement officer for the City of St. Peters acting under color of law. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

### *Background*

12. Plaintiff was a leader of the Ron Paul for President campaign in St. Charles

County, Missouri during the 2012 campaign.

13. Plaintiff was also a committee member of the St. Charles County Republican Central Committee, the organization that hosted the St. Charles County Republican Caucus on March 17, 2012.

14. Eugene Dokes, the Chairman of the Committee, assigned Bryan Spencer to serve as the chairman of the subcommittee for the caucus, which planned and organized the caucus for March 17, 2012.

15. Spencer rented facilities on behalf of the Committee at Francis Howell High School for the caucus.

16. Dokes signed a contract on behalf of the Committee with the City of St. Peters that provided for the City of St. Peters provide police-related services.

17. Under the contract, the City of St. Peters was to have ultimate responsibility for the direction of the police-related services provided by the City and the results thereof.

18. Under the contract, Dokes was to describe the services to be performed and provide the schedule of work to accomplish the services required, but such services were to be confined to traffic control, crowd control, the keeping of the peace, and enforcement of the laws of the State of Missouri and the ordinances of the City of St. Peters.

19. The key principals of success in the Missouri caucus process are organization, passion, and attendance at the county caucus level.

20. The more Ron Paul supporters who attended the county caucuses and the better organized they were relative to other candidates' supporters, the more representation Ron Paul would have at successive levels of caucus process in Missouri (i.e., the Congressional District Conventions, April 21, 2012; the State Convention, June 1-2, 2012) and at the Republican

National Convention, August 27-30, 2012.

21. Spencer was concerned about Ron Paul supporters, in general, and Plaintiff, specifically, dominating the St. Charles County caucus with superior organization, passion, and overwhelming attendance and thus sweeping the delegates from St. Charles County.

22. Dokes was concerned that the Ron Paul supporters would win the party caucus.

### *Caucus on March 17, 2012.*

23. Two police officers, Defendant Hickey and Lieutenant Kevin Turnbough, Hickey's supervisor, were assigned to secondary duty at the caucus.

24. Secondary duty means that the officers were assigned to the "people who hired" them, pursuant to the contract with the City of St. Peters, but were there in an official capacity as City of St. Peters' police officers with full police authority.

25. When they arrived before the start of the caucus, Defendant Hickey and Turnbough reported to Dokes and Spencer.

26. During their meeting with Dokes and Spencer before the caucus, Hickey and Turnbough were told to expect "trouble" from Ron Paul supporters.

27. The "trouble" Dokes and Spencer feared was that Ron Raul supporters would win.

28. The concerns about a Ron Paul victory turned out to be well-founded, as evidenced prior to start of the caucus by high turnout, with Ron Paul supporters predominating.

29. At the start of the caucus, Spencer announced that contrary to written caucus policies, no video or audio recording would be allowed.

30. Many caucus participants were angered by this announcement, suspecting it was a prelude to parliamentary shenanigans that Dokes and Spencer did not want captured on video.

31. Dokes directed Hickey and Turnbough to enforce the no-video rule.

32. The officers enforced the no-video rule by asking violators to stop videotaping or leave.

33. When one person refused, he was arrested.

34. During this episode, Turnbough called for additional officers.

35. Within minutes, additional officers began to arrive.

36. Ultimately, thirty officers from various law enforcement organizations and jurisdictions reported to the caucus location.

37. Dokes then continued the caucus.

38. Fearing Plaintiff's election as caucus chair, Dokes accepted the nomination of Matt Ehlen to serve as caucus chair and immediately closed the nomination process before anyone else could be nominated, including Plaintiff.

39. Dokes's trickery upset supporters of Mitt Romney and Ron Paul supporters, the latter who expected that, given that they represented the majority of those present at their caucus, they would be able to nominate and elect Plaintiff as chair as they had done at the 2008 St. Charles County caucus.

40. Using the anger at their trickery as a pretext, Dokes and Spencer, along with Ehlen, then adjourned the caucus without allocating delegates.

41. The real reason was that they did not want Ron Paul supporters to be elected delegates.

42. Ehlen, Dokes, and Spencer then informed attendees to depart the gymnasium.

43. Defendant Hickey directed Spencer to inform caucus attendees over the microphone that they would be arrested for trespassing if they did not depart the gymnasium.

5

44. Spencer did as he was directed and informed caucus attendees over the microphone that they would be arrested for trespassing if they did not depart the gymnasium.

45. Some, but not all, people attending the caucus departed the gymnasium immediately as directed.

46. Although the Plaintiff, as a Committee member was entitled occupy those facilities pursuant to the rental contract, he departed the gymnasium at that same time other caucus attendees were directed to do so.

47. Plaintiff departed the gymnasium, not because he believed he was not entitled to be in the gymnasium, but rather in an attempt to assemble caucus attendees outside before they drove home, because he feared that under Republican party rules, St. Charles County would be unrepresented if it did not designate its delegates that particular day – March 17, 2012.

48. When Plaintiff departed the gymnasium, many caucus attendees remained in the gymnasium.

49. Nobody was arrested or charged with trespassing for staying in the gymnasium after being ordered to leave upon the premature adjournment of the caucus.

50. Upon exiting the building, Plaintiff encouraged departing caucus attendees to gather around him so he could engage them in political speech.

51. The ensuing events were captured on a contemporaneous digital recording, which is filed as Exhibit 1, and is incorporated herein by reference..

52. In furtherance of his efforts to assemble people and speak to them about matters of public concern, Plaintiff stood on a chair –that was already on a sidewalk– in a manner that did not obstruct those walking to their cars and exercised his constitutionally protected core First Amendment political speech and associational rights.

53. Other individuals stood around Plaintiff in peaceful political assembly and still others milled about on the sidewalks and in the parking lot.

54. Hickey directed Officer Jacob Bass to arrest Plaintiff.

55. Plaintiff was not told he was trespassing.

56. Plaintiff was not asked to leave the sidewalk outside.

57. At Hickey's direction, Bass then arrested Plaintiff.

58. Plaintiff asked why he was being arrested.

59. Officers on the scene refused to answer Plaintiff's question.

60. Plaintiff was handcuffed, placed in a police car, transported to the City of St. Peters, booked, and held for approximately three hours.

61. None of the several hundred caucus attendees who had exited the gymnasium, including the scores of persons standing near Plaintiff, was arrested.

62. While at the police station, one officer told Plaintiff it would be a while before he would be able to leave because officials were calling upstairs to figure out what they were going to charge the Plaintiff with.

63. Hickey then initiated the proceeding against Plaintiff, charging him with trespassing.

64. Plaintiff was later acquitted on the trespassing charge at the close of the State's evidence.

65. As the direct and proximate result of the Defendants' actions and inactions, Plaintiff suffered the following injuries and damages:

a) Violation of his rights under the First Amendment applicable through the Fourteenth Amendment, to be free from arrest or prosecution or both for constitutionally protected acts of expression and assembly at a public place;

b) Unreasonable seizure of his person without a warrant or probable cause in violation of the Fourth Amendment, applicable through the Fourteenth Amendment;

c) Unlawful deprivation of his liberty without due process in violation of the Fifth Amendment, applicable through the Fourteenth Amendment; and

d) Deprivation of his liberty for approximately three hours.

## COUNT I

*42 U.S.C. § 1983 – False Arrest*
*Against Defendant Hickey in his Individual Capacity*

66. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

67. Plaintiff's harms were caused by the conduct of Defendant Hickey, taken under the color of law.

68. Upon being arrested, Plaintiff was seized for Fourth Amendment purposes.

69. Hickey had no probable cause to believe that Plaintiff had violated the City of St. Peters' trespassing ordinance.

70. Hickey lacked probable cause to direct the arrest of Plaintiff.

71. A reasonable officer would have known that there was no probable cause to direct the arrest of Plaintiff.

72. Hickey acted maliciously or for a purpose other than bringing Plaintiff to justice.

WHEREFORE Plaintiff respectfully requests this Court:

  A. Enter judgment in favor of Plaintiff against Hickey in his individual capacity;

  B. Award Plaintiff compensatory and punitive damages against Hickey in his individual capacity for his violation of Plaintiff's constitutional rights under the color of law;

  C. Award Plaintiff costs and reasonable attorneys' fees; and

  D. Allow such other and further relief to which Plaintiff may be entitled.

## COUNT II

*42 U.S.C. § 1983 – Malicious Prosecution*
*Against Defendant Hickey in his Individual Capacity*

73. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

74. Defendant Hickey, acting under the color of law, lacked probable cause to initiate the proceeding against Plaintiff charging him with trespassing.

75. A reasonable officer would have known that there was no probable cause to initiate the proceeding against Plaintiff charging him with trespassing.

76. Hickey lacked probable cause to continue the proceeding against Plaintiff up to and including trial.

77. A reasonable officer would have known that there was no probable cause to continue the proceeding against Plaintiff up to and including trial.

78. Hickey acted maliciously or for a purpose other than bringing Plaintiff to justice.

79. As a consequence of the prosecution for which he was ultimately acquitted, Plaintiff suffered significant harms, including the unlawful deprivation of his liberty without due process.

WHEREFORE Plaintiff respectfully requests this Court:

A. Enter judgment in favor of Plaintiff against Hickey in his individual capacity;

B. Award Plaintiff compensatory and punitive damages against Hickey in his individual capacity for his violation of Plaintiff's constitutional rights under the color of law;

C. Award Plaintiff costs and reasonable attorneys' fees; and

D. Allow such other and further relief to which Plaintiff may be entitled.

## COUNT III

*State Law Claim of False Arrest and Imprisonment*
*Against Defendant Hickey in his Individual Capacity*

80. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

81. Defendant Hickey, in his individual capacity, caused Plaintiff to be restrained, arrested, and imprisoned against his will without legal justification.

82. Hickey's conduct was not justified based on reasonable suspicion, execution of an arrest warrant, or upon probable cause.

83. Plaintiff's harms were caused by the conduct of Hickey.

WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff against Hickey, in his individual capacity;

B. Award Plaintiff compensatory and punitive damages against Hickey, in his individual capacity, for his false arrest and imprisonment of Plaintiff;

C. Award Plaintiff costs and reasonable attorneys' fees; and

D. Allow such other and further relief to which Plaintiff may be entitled.

## COUNT IV

*State Law Claim of Malicious Prosecution*
*Against Defendant Hickey in his Individual Capacity*

84. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

85. The commencement of the prosecution against the Plaintiff was instigated by Defendant Hickey.

86. There was want of probable cause for the prosecution of the Plaintiff.

87. Hickey's conduct was actuated by malice.

88. Plaintiff was harmed by Hickey' conduct.

WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff against Hickey, in his individual capacity;

B. Award Plaintiff compensatory and punitive damages against Hickey, in his individual capacity, for his malicious prosecution of Plaintiff;

C. Award Plaintiff costs and reasonable attorneys' fees; and

D. Allow such other and further relief to which Plaintiff may be entitled.

## COUNT V

*42 U.S.C. § 1983 Claims*
*Against Defendant City of St. Peters, Missouri*

89. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

90. Prior to March 17, 2012, the Defendant City of St. Peters's policies, customs, and practices exhibited deliberate indifference to the constitutional rights of persons, such as Plaintiff and this deliberate interference caused the violation of Plaintiff's rights.

91. The Defendant City of St. Peters has previously been sued for violations of the First, Fourth, and Fifth Amendments.

92. It was the policy, custom, and practice of the City of St. Peters to inadequately hire, train, and supervise its police officers, including Defendant Hickey, thereby failing to prevent the constitutional violations against Plaintiff.

93. It was the policy, custom, and practice of the City of St. Peters to contract out police services to third parties, without adequate oversight and supervision, in a manner that caused the violation of Plaintiff's constitutional rights.

94. Plaintiff's harms were caused by the City of St. Peters' policy, customs, and practices of failing to adequately train and supervise its police officers.

WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff against the City of St. Peters;

B. Award Plaintiff compensatory damages against the City of St. Peters, for its violation of Plaintiff's constitutional rights;

C. Award Plaintiff costs, including reasonable attorneys fees; and

D. Allow such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,


/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
GRANT R. DOTY, #60788MO
AMERICAN CIVIL LIBERTIES UNION OF
    EASTERN MISSOURI
454 Whittier Street
St. Louis, Missouri 63108
(314) 652-3114
FAX: (314) 652-3112
tony@aclu-em.org
grant@aclu-em.org

***ATTORNEYS FOR PLAINTIFF***